We have our last case for the day, Seamans v. Temple University. Good morning, Your Honor. May I please report, uh, Gregory Gorski, Francis M. Melnick, representing your client, Edward Seamans. Your Honor, may I reserve three minutes for rebuttal this time? That's great. Thank you, Your Honor. The district court earned a granting summary judgment to Temple because it misinterpreted the Higher Education Act, or the HEA, to exempt Temple from its responsibilities under the Fair Credit Reporting Act, or the FCRA. The relevant provision in question under the HEA, however, has no effect on the Temple's responsibilities under the Fair Credit Reporting Act. We're going to have to figure out what the interplay is between the Fair Credit Reporting Act and the HEA. Are you saying that the HEA has no application whatsoever in this case? It's basically irrelevant? Under the facts of this case, Your Honor, the answer to that question is yes. Okay. And that's primarily because, uh, first, the statute itself explicitly applies only to consumer reporting agencies, and it is unambiguous that the Temple is not a consumer reporting agency. And second, the statute's effect on the time period that is allowed for reporting of records, loans, and collection lasts only until the loan is paid in full. And it is undisputed that at the time Mr. Seamans disputed the account in question, the loan was already paid in full. So the HEA does have an effect then, right? No, Your Honor. The HEA would not be in effect at the time Mr. Seamans disputed. The FCRA's provisions would be in effect at that time. Seven-year period. Correct, Your Honor, under Section CA-4. Okay. For accounts placed for collections. And so what would be allowed in May of 2011, he pays, and we'll put it in use. How long can the trade loans stay on under the HEA or FCRA, whichever statute? At that point in time, the trade loans should no longer be in effect. Why is it that it should just disappear? Why should it remain at least as preliminary as sort of an adverse event? Because it would show, right, a time frame had passed before this thing could be paid. Right. Your Honor, the Section C of the FCRA accounts for two of the circumstances. One is accounts placed for collections, and two is for other adverse information. The facts of this case reflect that this account was unambiguously an account placed for collection. The account records from the face of it are repeat with reference to the fact that this is an account placed for collection. So Section CA-4 is the time period it should apply, and not a different analysis which might be conducted under Section CA-5. So if it's under CA-4, it's seven years from the date of collection, which is 1992? It's from the date of first delinquency, plus 180 days. So it would be seven years from the date of first delinquency, and that calculation includes 180 days. So it's seven and a half years approximately, Your Honor. So in this scenario, when would that bring us to 1999? That would bring us to approximately late 1999, Your Honor. And if it were 1999, are you saying that it should have come off the report and should never have appeared? I'm saying it's possible in 1999, depending on what the facts might have been at that time, that the account could have continued to be reported pursuant to the HEA's exemption for credit reporting agencies. However, under the circumstances in 2011, that's not the case. But isn't that part of the motivation of the District Court's decision that the HEA would have allowed the credit agency to continue to report it? And that's why there's no harm under the FCRA? Well, Your Honor, but that's not the facts at the time. It just seems disputed. So the analysis needs to be conducted at the time it just seems disputed, because that's when Temple's obligation to conduct a reasonable investigation arises. So the facts may be And therefore, the FCRA is really the only applicable statute in analyzing whether or not what Temple did was reasonable or unreasonable. In May 2011, then, what could have remained on that trade line under the FCRA? Anything? If the account was properly reported by Temple, it would have informed the credit reporting agencies to remove the account from Mr. Seema's credit report. But the SCRA, I'm sorry, the credit agency could have left it if it chose to enter the SCRA for seven years? Is that right? No, Your Honor. If Temple was reporting it properly, but it was properly freely a first delinquency, at the time Temple responded to that dispute, it responded with that information, it should have informed the credit reporting agencies to remove the account from Mr. Seema's credit report. And the facts to support that, the testimony of TransUnion's representative confirms that TransUnion owes to the date of first delinquency as to when to remove the account. Furthermore, there are industry standards that corroborate that furniture may be fully aware of the importance of a clean date of first delinquency. When you say industry standards, are you talking about that manual? The senior manual, yes, Your Honor. How is that persuasive in this case? I mean, is it really any more persuasive than your brief? I mean, it doesn't have the force of law or anything. I hear you, Your Honor. It doesn't have the force of law, but it certainly speaks to the understanding that furniture must have in terms of how to issue reporting information back to consumer reporting agencies. This is the instruction manual that the consumer reporting agencies give to furniture credit information to assist them in how to respond. That document is reviewed with advisements that the date of first delinquency was used to determine when information becomes obsolete, and it specifically instructs furnitures to report that information to the consumer reporting agency. Let me just ask you, hypothetically, if your client never paid the loan back, how long can he continue on his credit report? Forever, right? Correct, assuming that the HEA applies in those circumstances. Why wouldn't it apply? Well, Your Honor, there are other concerning requisites for the HEA to apply. Obviously, if you look further back in the statute, there must be some agreement between Temple and the consumer reporting agency. I assume that's all. I assume it's a fair conclusion and all that. Correct, Your Honor. Assuming that is the case and the HEA does apply and Mr. Siemens did not pay back. The loan is unpaid. That account, their loan, hypothetically, goes down as reported indefinitely. And is it conceded in this case that the HEA did apply up until the point in time that the loan was paid? Your Honor, I don't know the answer to that question. It's the agreement between Temple and them. Temple didn't produce any information during discovery that would reflect there was an agreement and the credit reporting agencies were otherwise following the HEA with respect to the account in question. So that would be a hypothetical in terms of whether or not it was actually applied before Mr. Siemens. How did the district court handle that? I didn't realize this was really an issue. Didn't the district court assume that the HEA applied? I think it did. Okay. Your Honor, the HEA, if the HEA is removed from the picture, the only consideration remains as to whether material questions of fact exist to the political conclusion that Temple either negligently or willfully failed to conduct a reasonable investigation. The answer to that question is yes. As long as a substantial record exists to support an inclusion, the Temple's investigations were unreasonable. You say it's an issue of fact? Yes, I do. There are four key pieces of information that Temple failed to report in responding to its disputes. First, and we've discussed this somewhere already, it failed to report a day of first delinquency. Second, it failed to modify the account status. Third, it failed to modify the payment history. And fourth, it failed to report the account as disputed. The consequences of Temple's failures are evident. One, it conceals the fact that the account should be removed from Mr. Siemens' credit reports. And two, it frustrates Mr. Siemens' right to have the account reported as disputed. What are the damages in this case? Are there statutory damages? There are statutory damages if the conduct is considered willful, Your Honor. The plaintiff is also claiming actual damages for lost credit opportunities and for non-economic type of damages such as damage to reputation and emotional distress. Your brief doesn't seem to address the negligent noncompliance. Are you pursuing that theory? Or are you laying under the willful? Both theories are on it. Even though the brief didn't really address the district court's denial of that. Respectfully, Your Honor, I think our brief does address it because what we do point out is with regards to Temple's failures in reporting this information, his underlying conduct, there's material, if there are facts that support that his conduct in this regard was unreasonable. First and foremost, the information that Temple failed to report was clearly on the account script. So the dispute processor did not need to look any further than her computer screen to find information that it failed to report or modify. So the screen would have reflected both the presence of a dispute together with the date of first delinquency? The screen would have easily identified the date of first delinquency. It would have easily identified that the account was placed for collections. In fact, the dispute processor during the deposition had no trouble finding that within a matter of seconds. Furthermore, she testified that the way she did report was inaccurate. Other than that, Your Honor. Your position in support of the negligence claim is that just committing to ACS is just not enough? More than that, Your Honor. Committing to ACS is just not enough given the fact that Temple had no understanding of what procedures that they were following and did not really have a full appreciation for what it was doing or not doing. But above and beyond that, what we found is that as a matter of policy, Temple was not reporting a date of first delinquency. Furthermore, as a matter of policy, at the time that these disputes were waged, they were not reporting accounts as disputed. Now, other circuits, such as the Sixth Circuit and ODO, not only found that a question as to negligence existed, but also a question as to punitive damages existed when there was evidence to show that there are policies in effect that would frustrate the purposes of the FCRA, which I think is evident here because the testimony suggests that there are policies to never report a date of first delinquency and never report an account as disputed. Your Honor, the HCA really has no place at the table here for considering whether Temple failed to comply with its duties. And with the HCA off the table and out of the picture, the picture is clear that there are material questions, in fact, that exist as to whether Temple negligently or willfully failed to conduct reasonable investigations. For that reason, we are asking the Court to reverse and revamp this case to the District Court for a third time. Your Honor. I apologize for our briefness, Your Honor. Thank you. On your rebuttal, if you could address the willfulness issue, too, that would be great. I will do that. Thank you. Good morning, Your Honor. It's Richard Perk, finding Cresthaven Harris on behalf of Temple University. May it please the Court. The intent of Congress, the express intent of Congress in this case could not be clearer, particularly as it pertains to student loans. Congress has set forth a very well-thought-out scheme related to the collection and repayment of student loans throughout the legal spectrum. In the HCA, the Higher Education Act, it expressly sets forth an issue dealing with credit reporting under 1087CC, also under 1080A, dealing with another section of student loans. Congress has established that in bankruptcy, you cannot discharge a student loan unless under the most extreme circumstances. Congress has also established that there is no statute of limitations in terms of the repayment of student loans and that any state law regarding a statute of limitations on contract is void. Congress has done this, as it expressed in the amendments to the HCA, because they wanted to make it extremely clear you have to repay your student loans. You cannot wait out the clock and avoid your obligations. And it will appear on your credit report for as long as you don't pay it. And what we have in this case is a very unique conjunction between the HCA and the Fair Credit Reporting Act. It is clear, and I'm not going to debate certain facts. If this was a credit card debt or another transaction, the responsibilities of reporting would be clear. If it was in collections, there's no question that the expiration of a seven-year period of time, it would fall off. So you're saying that the report is inaccurate, but for the HCA's application? Your Honor, I would say that it's not inaccurate because of the HCA. Okay. Because it's not treated, the student loan is not treated like a credit card, like a medical debt, or like any other transaction. So you're suggesting that the HCA allows, gives you discontinuation from inaccuracies? That the definition of what's accurate and what's inaccurate changes for student loans. If something is in collection or something has been fully paid, how should it matter whether it's a student loan that is the subject of the payment or the collection activity or credit card? Because what happens is the effect of this language, and the specific language of until this loan is paid in full, has the effect of taking that period of repayment, that time. You see, with a student loan, what you have for credit reporting is, in a traditional context, you have a period of repayment, at which time at the conclusion of repayment it would always be a positive status as far as the account status. And if the court would, at an important point in time, if you looked at the credit report in this case, and it's at the record of 8254 and another copy of 8265, you'll see that the credit report contains, in essence, for purposes of this case, two distinct key elements. The first of which is the account status. And during the course of a loan, it's going to say the account status needs to be paid, it's overdue, it's not fulfilled. At the completion of the loan process, it says it's paid in full. Let's talk about the interplay between these two statutes. You're saying 1087 CC, I guess it's C3, where it mentions 681 C4 and 5, okay? It doesn't just deal with the time periods? You're assigning quite a lot of weight to that particular section of 1087 CC, C3. I think your adversary would read that as, you know, it says that 1081 C4 and 5 say seven years. This particular section says notwithstanding those two sections, it's until the loan is paid. You're saying it has even more significance. It deals with the reporting requirements and other things. Something more than just the time period? Well, no, because the time period is critical. The time period is what is being, what we'll say is giving immunity. Well, it's either on or off, right? That's what the significance of the time period is, right? Correct. In a traditional credit account circumstance, if you were to file a date of delinquency, as a practical matter as testified by these transmedia representatives in this case, an account will run off someone's credit report after seven years from the date of first delinquency. There's no debate about that. We don't debate that issue. So what happens if it's not a Perkins loan? I'm sorry. Unless it's a Perkins loan and the other requirements in the HEA. Correct. And how does, the practical question is how does that not run off of a credit report? We're dealing with all of these systems and the way that this works is that there is no date of delinquency that is provided to the credit bureaus during this period of time. Because if you gave them a date of delinquency while the loan was still unpaid, it would naturally fall off automatically. If you provided code 93, which is the collections code in an active account that has not been paid in full, it would fall off, and in this case, 1999. So even when the loan had not been repaid, it would have fallen off. What Congress has done, what they expressly state when they amended the HEA to what the other section was, you can't do that. So what they have directed is you don't provide a date of delinquency. You don't provide anything that deals with the words collections or is in collections to the credit reporting bureau during this period of time because if you did, it would fall off and defeat the intent of Congress to have this remain on your credit report during the entire repayment period. What if there was a dispute, the fact that there was a dispute, that for some reason the student saw that on the credit line a dollar amount and filed this and wrote a dispute and said you have the wrong number? Isn't there an obligation to stick to correct that? Yes, and the case law in the circuit and elsewhere is pretty clear. So here you take a look at the dispute, what's being disputed, and the responsibility of the data furniture under S2B is to respond to exactly what is being disputed. So here we have a scenario where there was a dispute, albeit in May 2011, that period of time. It doesn't appear on the report where the policy was for it not to be reported. Cortez, in this court's decision, Cortez says it's the kind of information when we expect it to be in a report, right? Isn't that a problem? Forget the HEA. Let's assume it applies in this scenario. No, because... Because you still have an inaccuracy in the report. No, Your Honor, and the reason is because you have to take a look at the circumstance and the snapshot at that moment in time. The dispute comes in and what Mr. Seaton's dispute is, A, the trade line was on his report for some inexplicable reason. There is no record evidence that tells why, why not. There was a period of time during repayment in which it appears that Mr. Seaton did not have his trade line at all on his credit report. So what happens is he pays the loan, and then in accordance with statute, that would impose it having been paid, and lo and behold, the whole trade line now is on his credit report. And he says, wait a second, how did this get here? It hasn't been on there for years. And he files a dispute. He says, this hasn't been on my credit report for years. How come it's here? Temple says, you know, we're reporting accurate. We're reporting the account as paid in full, which it was. And they're also reporting that at least for the last two years, it had been 180 days late. But wasn't it in collection during that period? Wasn't it in collection? So that wouldn't have been accurate, right? Well, no, because a snapshot of what the protections of 1087 CCC would say is that that provision calculates whether somebody's in collection and the application of it doesn't apply. So wait, it's paid in full, and you no longer have the protections of moving back under 1087 CC. You have an account that is not in collections as of that present day, and you have an account that was not paid 480 days late for at least two years and technically 20 years prior. So what we state and what we put in our brief is, is you have to look at that period of time, under 1087 CC, where the date of delinquency, where in collections, does not apply as a reporting requirement. And you can't look back and say, okay, now it's your job to go back and say it was in collections during the period of time that it was when you were otherwise immune. This is much like the scenario that we analogized it to of someone whose record was expunged. You can't go back and say when you engaged in some criminal activity back then, but your record was expunged. So to follow up on what Judge Gigaffis was asking earlier, you're giving the HEA all kinds of broad protections to folks like your client, including not only time frames, but information that ever needs to be reported once the line is there. We're giving it not broad protections, but the very simple protection that it provides, which is that the student loan is not going to come off your credit report during the period of time that it is in repayment. The purpose of which is that when you come out of repayment, your student loan is now in a good, positive status, and like every other student loan borrower in the United States, and has a credit in the period of reporting, positive credit reports stay on, positive trade lines stay on your credit report for 10 years post less activity. So that's why it's on the report right now. Correct. It's a positive thing. I actually understood Mr. Siemens to be arguing that his credit score went down 100 points because this was reported now on his credit report, because it's clear when you look at the credit report that he had been there for 20 years. Yes, Your Honor. They're from the station. First of all, part of his argument, and that's the trial court recognized was, and as his dispute stated, his credit score was affected because, number one, it wasn't on his credit report for some inexplicable reason prior to him paying it. So suddenly we have a new trade line. The very fact that we have a new trade line that's not reported is going to affect the credit score. The second aspect of what impacted his credit score is the existence of, it was 180 days late for at least the last two years, which is a factual accuracy. It was 180 days late for 20 years. Forget two years. So the question then becomes, how do you treat that 180-day wait for each of those 24 months? And for each of those 24 months, you again look at the statute. Now we're no longer under the protections of 1087CC. You would look to 1681C and look at what section that would apply. You would look at that section and you would say what section applies. In that case, it is A-5. Any other adverse item of information other than the records of conviction of crime, which he anticipates to report by 27 years. So how does that translate into credit reporting? What happens is each of those months, for which are 180 days late, fall off the credit report month by month by month as time passes. So in essence, as of the date, May 2011, anything on that report seven years back in terms of late payments, now I'm talking about the status of the account, but the late payments, would fall off month by month by month. So those 24, 180-day period would be the provisions of 1681C, A-5 would apply. And they fall off. For example, if it's January of 2010, that month would fall off in January of 2017. And February of 2010 would fall off in February of 2017. Can I ask you a hypothetical? Yes, John. The pregnancy loan is receiving 92. Let's say it's defaulted, goes into collections, and the loan is paid in 1995. How long could a CRA continue to report the loan? A CRA would report the loan. In 1995, it's paid back. Correct. Once it's paid in full, the account status is paid in full. Okay. That's a positive. Okay, but how long could a CRA keep it? A CRA can keep the testimony in this case as clear, that a positive notation on anyone's credit report will stay on the credit report for 10 years from the date of the last activity. So that would be 10 years from when they paid it off, which would be 1995, would be on until 2005, as it paid in full account. When HEA asks about cooperative agreements, is there anything in the record that supports the existence of one between Temple and the accredited agencies? No, I mean, as far as the law, it wasn't disputed to the point that there didn't exist anything. As far as the traditional ones, the cooperative agreements of the data firm sure has an agreement. I'm just asking about what the record is. Yeah, the officer said there's nothing in the record about that. Right, it wasn't an issue of dispute, just as the issue of why or why it wasn't on his credit report. It's just nothing no one could have an answer to. Could you deal with the worthiness argument? Yes, Your Honor. Clearly, and this court has touched on that and has refuted the Southwest case which Judge Finasci sat on the panel for. I mean, it's pretty clear what was going on. The information is there. Again, there's nothing stupid about that. The question is taking a look at the information and applying the Higher Education Act when the dispute comes in. In and of itself, that's reasonable. The fact is, and I'll quote from the fetus, the court established a safe harbor against liability for worthiness. A company cannot be said to have worthily violated the SCRA if the company acted on a reasonable interpretation of the SCRA's coverage. So they acted on a reasonable interpretation of the interaction between the HEA and the SCRA. I would make the argument that the very fact that a United States District Court found somersaulting on the issue, even if this court would disagree with it, shows that reasonable lines in this particular case can come up with different interpretations and that as a matter of law, that would mean that the protections of safe-go apply, as this court said in Fuges v. Southwest Financial Services, that the worthiness issue, under any circumstance, regardless of how this panel comes out, is off the table and should be affirmed. All right. Thank you, counsel. Thank you very much. Your request to address your request that I speak to the worthiness claim has discussed the intention here that material questions of fact exist as to whether or not Temple's conduct was willful, and in effect, based on Safeco's understanding of the term willful, whether it was reckless. And that is traditionally a question of fact for a jury. I've broken down the facts that support that, which include the fact that the information that was now reported was evident from the account screen in front of the dispute processor and that Temple had policies in place to frustrate the FCRA, including never reporting an account as disputed and never reporting a date of first delinquency. Absent a safe marker under Safeco, we think that question should be perjurious to whether or not Temple will fully violate the statute. As to whether or not there is a Safeco safe marker present in this case, your Honor, we would argue that there is none. First, the requirements of the furniture under FCRA Section S2B are well understood because there are numerous circuit courts that have provided guidance on how to conduct an investigation. Well, your answer brings up a point. At least the district court here agreed with that, you know. Your Honor, because of a misreading of the HEA, there's certainly guidance with regards to how to conduct an investigation under S2B. Now, the question is then, is there a safe marker because Temple possesses a reasonable reading of the HEA? We would argue that there is none because this statute is unambiguous and there is no reasonable alternative reading that could be had. The reason for that is twofold, your Honor. First, the statute is explicit that it applies only to consumer reporting agencies. It's undisputed and unambiguous that Temple is not a consumer reporting agency. Second, the time allowed for the reporting of this information applies only until after the loan is paid full. And again, it's undisputed and unambiguous that the account was paid in full at the time Mr. Seaman's disputed. Now, listening to what Mr. Platt argued, his interpretation, quote, is that the HEA is, you don't provide me a first appointment. I don't see that anywhere in the HEA. I don't see that anywhere in the FCRA. They're reading into things that simply aren't there explicitly and implicitly. Accordingly, the safe marker here simply does not exist with respect to willfulness. Your Honor, I see that I'm just about out of time. I would begin with this. Is this case so unique? I mean, it's unlikely to be repeated, ending with a 20-year delinquency and an $11,000 non-reprobation. Your Honor, I think there is an approach to this case, and the importance is that to allow a foreigner such as Temple to not report, be it a first delinquency, not report an accurate account status, not report to the Ministry, places the consumer at risk, I mean, appropriately, having derogatory information on his credit report for an indefinite period of time. And that's precisely not what Congress intended when it drafted the FCRA. I see I'm out of time, sir. Okay, thank you, counsel. Thank you, Your Honor. We believe this case was very well briefed and argued. We'll take it under rebuttal. Thank you.